ELDEN O. BORNEMAN, et als. *vs.* H. A. G. MILLIKEN, et als.

Lincoln.    Opinion March 2, 1917.

*Trespass quare clausum.    Rule of law as to adverse possession where person
occupying land makes no claim to land not included in his deed,
even though his occupation of same has been for requisite
period of time sufficient to give adverse possession.*

Action trespass quare clausum.    The case involved the location of plaintiff's
westerly line which, in turn, involved the location of their easterly line, since
the defendant's land extended easterly and westerly one mile.    The latter line
is the true town line between the towns of Warren and Waldoboro, and the
location of this latter line was the real issue.

*Held*:

1.   That the true easterly line is the one which makes the easterly shore of Little
Pond, so-called, a portion of the line, and thus places Little Pond in the town
of Waldoboro; not that line claimed to be run in 1812 which was wholly
westerly of Little Pond and placed that pond in the town of Warren.

2.   Adverse possession, claimed by plaintiffs, is ineffectual since the plaintiff's
predecessor testified emphatically that whatever his occupancy might have
been he had no intention of claiming any land not included in his deed.    Such
occupancy does not work title by adverse possession.

Action of trespass quare clausum.    Defendant filed a plea of
general issue and brief statement.    Verdict of not guilty for defend-
ant, Scott, by order of court.    Verdict for plaintiff as against other
defendants in the sum of $553.25.    Defendants filed a motion for new
trial.    Motion sustained.    New trial granted.

Case stated in opinion.

*M. A. Johnson*, for plaintiff.

*A. S. Littlefield*, for defendants.

SITTING:   SAVAGE, C. J., CORNISH, KING, BIRD, HALEY,
PHILBROOK, JJ.

PHILBROOK, J.   On April 8, 1914, Fred W. Scott, one of the
defendants, conveyed to H. A. G. and B. F. Milliken, the other two
defendants, all the wood and lumber standing on a certain lot of land
situated in the town of Waldoboro.    The Millikens began a lumbering

operation on the premises.   The plaintiffs claim that, while operating on a portion of what they allege to be the lot, the defendants committed trespass on their land.   At the trial below verdict was directed in favor of the defendant Scott, but the jury returned a verdict against the Millikens.   The case is before us on a motion to have that verdict set aside and a new trial granted.

From a study of the evidence and plans introduced we use the following illustrative sketch.

A............................Little Pond, so-called.
B............................Part of Southerly Pond, so-called.
C D ........................Town line between Warren and Waldoboro as claimed by defendant.
S T..........................Town line as claimed by plaintiff.
E F G H ................Plaintiff's land as claimed by defendant.
V W L K J I..........Plaintiffs' land as claimed by plaintiff.
R R ........................Road from Warren to South Waldoboro.
P............................Farm buildings of plaintiffs.

The trespass was west of the line G H, and as the defendants claim that to be the west line of plaintiff's land, they say they did not trespass on the land of the latter. The plaintiff's, claiming L K J I to be their west line say that the trespass was on their land. The parties are therefore at variance as to what constitutes the west line of the plaintiffs' land but, as we shall see, the real issue relates to the true location of the town line which forms the east boundary of the plaintiffs' land.

The plaintiffs' land is a portion of the same land which Waterman Thomas conveyed to Godfrey Hofses by deed dated December 30, 1779, acknowledged September 14, 1793, and recorded on the latter date. In that deed the land was bounded on the east by the Waldo-boro town line and extended westerly one mile. If the true town line, at the date of the above conveyance, were D C, as claimed by the defendant, the one mile dimension toward the west would be reached at the line G H. If that town line were farther west, at S T, as claimed by the plaintiff, the one mile dimension toward the west would be reached on the north side of the land, at the point L.

After the death of Godfrey Hofses commissioners were appointed Jan. 10, 1811, to divide his real estate, and the land, of which the land in controversy is a portion, was divided into seven narrow strips running from the easterly to the westerly bounds thereof. The widest strip was set off to the widow, Mary Hofses, and the six remaining strips were set off to children of Godfrey, each of the strips being described as "extending from one end of said lot to the other." The width of the strip set off to the widow, Mary Hofses, was $33\frac{1}{4}$ rods, that to Betsy Hofses a daughter, $13\frac{1}{2}$ rods, that to William Hofses, a son, $10\frac{1}{4}$ rods, that to Andrew Hofses, a son 10 rods, that to Mary Howard, a daughter, who in a deed given later is spoken of as Polly Howard, 12 rods, that to Peggy Hofses, a daughter, 12 rods, that to Barbary Achorn, a daughter, 13 rods. The total of the widths is 104 rods. Based upon the above division a plan was made and filed in the Probate Office by the same Waterman Thomas who conveyed the land to Godfrey Hofses, and who was also a surveyor, which plan shows the width of 104 rods and refers to the east bound of the land as being the "Warren line." It seems to be established beyond controversy, then, that the homestead farm which Hofses bought of Thomas by deed dated in 1779, but not acknowledged and recorded until 1793, and which in 1811 was divided among his heirs, was

bounded on the east by the town line between Warren and Waldoboro, as the line was then understood to be located, and extended one mile toward the west.

It appears that in the year 1812 one James Malcom undertook to run the line between the two towns, but the record does not disclose the reason nor the authority for his so doing. His line is shown upon an ancient plan introduced by the defendant, but it bears the legend "Erroneous line run in 1812 by James Malcom." The Malcom line is not only wholly west of Little Pond, but does not touch any part of that pond, thus leaving that pond in the town of Warren. On the same ancient plan is another line bearing the legend "Original Town Line" which is east of Little Pond, uses a part of the east shore of the pond as part of the line, and thus places that pond in the town of Waldoboro. The "Malcom line" is the line S T on the sketch and is the true town line as claimed by the plaintiffs.

In the year 1836 commissioners were appointed by authority of the Supreme Judicial Court "to establish the line between the towns of Waldoboro and Warren." They attended to their duty and their report establishes the line as being east of Little Pond, using a portion of its easterly shore as a portion of the line, and necessarily placing the pond in Waldoboro as claimed by defendants, and not in Warren as claimed by plaintiffs. In the year 1896 the municipal officers of the towns of Waldoboro and Warren employed a surveyor to run the line between the towns. That surveyor established the line to be east of Little Pond. He also found on that line two old trees both having marks 1828 and 1836 in figures and the letter "W".

The town of Waldoboro was incorporated by the General Court of Massachusetts in the year 1773, and in describing its easterly boundary we find one of the courses to be, "thence to run south, fifteen degrees east, three hundred and twenty rods to a stake standing on the bank of Little Pond, so-called, thence easterly by the shore of said pond, to the easterly point thereof, thence south fifteen degrees east, to a stake standing on the bank of the Southerly pond, so-called". This course would necessarily place Little Pond in the town of Waldoboro and not in the town of Warren.

The surveyor employed by the plaintiff determined the town line to be the line S T, which is apparently the Malcom line, and found what he regarded as evidential monuments thereon. The surveyor employed by the defendants determined the town line to be the line

C D. In his survey he found a monument marked "1896," which was the year in which the municipal officers of Waldoboro and Warren run the line, as we have seen, and also other indications that his line was the same as that run in the year to which reference has just been made.

After giving due consideration to the elaborate and exhaustive argument of the plaintiffs' counsel in support of the opposite view we are convinced that the line C D was the original line, and the true line, between the two towns; that it was the easterly boundary of the Hofses property; and as that property extended westerly one mile, and no more, that the westerly line of plaintiffs' property is the line G H.

As the claim of title by adverse possession is effectually disposed of by the testimony of plaintiffs' predecessor, Studley, who says that, whatever his occupancy might have been, he had no intention of claiming any land not included in his deed, the argument of rights under such a claim is answered. *Preble* v. *M. C. R. R. Co.*, 85 Maine, 260, and cases cited at page 264. Although this doctrine has been questioned in other jurisdictions it has been the settled law of this State since the year 1824, and we here re-affirm it.

We have not overlooked the claim of plaintiffs' counsel as to the effect of certain litigation between Studley, a predecessor in title of the defendant Scott, and one Simmons, but as that does not to our minds effectually apply to the question at issue, we are obliged to dismiss it.

It is our conclusion therefore that the jury manifestly erred and the mandate must be,

*Motion sustained.*
*New trial granted.*